# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 ZAKARIA H. LOUTFI**
**United States Army, Appellant**

ARMY 20100489

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Michael J. Benjamin, Staff Judge Advocate (pretrial)
Colonel Francis P. King, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain John L. Schriver, JA (on brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Captain Sasha N. Rutizer, JA (on brief).

31 January 2013

----------------------------------
SUMMARY DISPOSITION
----------------------------------

MARTIN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of one specification of wrongfully using marijuana, in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2006). Contrary to his pleas, a general court-martial composed of officer members found appellant guilty of one specification of abusive sexual contact, and one specification of furnishing alcohol to a minor in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934 (2006 & Supp. II 2008). The panel sentenced appellant to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence and credited appellant with five days of confinement credit against the sentence to confinement.

Appellant alleges that his defense counsel, Captains (CPTs) JG and JM were ineffective for pursuing and maintaining a consent defense and mistake of fact as to consent defense where appellant, who testified in his defense, denied that the charged sexual contact ever occurred. As a result, appellant claims that he was prejudiced in his defense. We disagree.

## BACKGROUND

At the time of the offense, appellant and the victim, Private (PVT) A-N, had recently completed training at Fort Benning and were in-processing into their first unit located at Fort Bliss, Texas. The two spent time together during the day and later began drinking alcohol in appellant's barrack's room. Appellant was twenty-nine years old, and PVT A-N was nineteen years old. Appellant was housed in a trailer with three separate bedrooms and there were two other soldiers living in the trailer at the time of the offense. After spending time with appellant, PVT A-N left for several hours to go to a strip club with several other newly arrived soldiers. There was undisputed evidence that PVT A-N was intoxicated, but there was dispute as to his level of intoxication.

After leaving the club, PVT A-N asked the driver to drop him off at appellant's room. Private A-N testified that he was very distraught about a recent break up with a girlfriend back home. He testified that appellant convinced him it was time to go to sleep and put him in appellant's bed. Private A-N testified that he woke up face down on the bed, naked from the waist down, with appellant on top of him, and felt pain and pressure in his anus. Private A-N jumped up, yelled and cursed at appellant, and got dressed and left the room. Private A-N testified that he walked to his own barracks room (about one mile away), grabbed his knife, and returned to appellant's room because he intended to kill him. He called several other soldiers who intercepted PVT A-N and called the staff duty non-commissioned officer.

The foregoing events formed the basis of the abusive sexual contact charge, and during his court-martial, appellant testified on the merits. His version of the events generally matched PVT A-N's up to the point of the assault. Appellant testified that after PVT A-N returned to his room, the two engaged in mutual, consensual kissing and fondling. Appellant further testified that he was unable to get an erection, and the two just fell asleep. He was, therefore, surprised when PVT A-N woke up angry and stormed out of the room. Appellant testified that the abusive sexual contact simply never occurred.

After the incident, PVT A-N was taken to the hospital where he made an allegation of sexual assault and was examined and treated by a Sexual Assault Nurse Examiner (SANE). The SANE testified that PVT A-N had injuries to his anus that were consistent with penetration or attempted penetration. The same SANE later

collected evidence on appellant, who told her that he had consensual sex. DNA evidence taken from the victim and appellant showed that there was mixed DNA from both appellant and the victim found on the inside panel of the shorts worn by appellant. The forensic DNA examiner also found PVT A-N's semen and sperm on the outside of his own pants, but could not specify how long the semen and sperm had been there. A forensic toxicologist testified that PVT A-N's blood alcohol content (BAC) was approximately 0.16, or twice the legal driving limit, at the time of the assault.

## LAW AND DISCUSION

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. U.S. CONST. amend. VI; *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). We review de novo claims that an appellant did not receive the effective assistance of counsel. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). "In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)." *Gooch*, 69 M.J. at 361. To overcome the presumption of competence, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

This Court applies a three-part test to determine whether the presumption of competence has been overcome: (1) "Are the allegations true, and, if so, is there any reasonable explanation for counsel's actions?"; (2) "If the allegations are true, did counsel's performance fall measurably below expected standards?"; and (3) "Is there a reasonable probability that, absent the errors, there would have been a different outcome?" *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

Generally, "[w]e will not second-guess the strategic or tactical decisions made at trial by defense counsel . . . ." *United States v. Rivas,* 3 M.J. 282, 289 (C.M.A. 1977). Moreover, "heavy deference is given to trial defense counsel's judgments, and this Court presumes counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citing *Strickland*, 466 U.S. at 689). *See also United States v. Stephenson,* 33 M.J. 79, 82 (C.M.A. 1991).

In this case, appellant alleges that his defense counsel was ineffective for using the same defense theory throughout all phases of the trial—namely, that appellant and PVT A-N both had too much to drink and engaged in limited touching, kissing and fondling, before passing out. Furthermore, when PVT A-N woke up in appellant's room, he was embarrassed by what had transpired, was concerned that

the other soldiers may have been aware of the sexual activity, and made a false allegation against appellant as a cover story.

A complete review of the record reveals that the defense counsel pursued a viable theory given the weight and nature of the evidence as well as appellant's decision to testify. Throughout his opening statement, his direct and cross-examinations of witnesses, and his closing argument, the defense counsel never conceded the facts supporting abusive sexual contact, contrary to appellant's allegation of ineffectiveness. Instead, he underscored the evidence that supported the theory that PVT A-N was drinking but not drunk, and that appellant had not supplied him the alcohol. The defense counsel elicited testimony that PVT A-N asked the driver to drop him off at appellant's room after a night at the club, and then engaged in consensual touching and kissing with appellant before passing out. Through cross-examination, defense counsel also tried to minimize damaging testimony provided by the SANE and the forensic DNA examiner. Appellant's testimony tracked with defense counsel's approach. While appellant did report to the SANE that he had engaged in "consensual sex" with PVT A-N, appellant explained that he was referring to the kissing and fondling, and not to the actions that were reflected in the abusive sexual contact charge. The defense counsel highlighted the fact that the discovery of PVT A-N's own semen on his own pants supported appellant's account of consensual fondling. Finally, when the parties discussed potential instructions with the military judge, the defense counsel conceded that appellant's testimony effectively denied the charge, and that the instructions of consent and mistake of fact as to consent, simply were not raised by the evidence.

Defense counsel sought every opportunity to attempt to discredit PVT A-N and his version of events, and was able to demonstrate that PVT A-N possessed, at the very least, a motive to fabricate. Although appellant was ultimately convicted of the charged offenses and received a significant sentence, the outcome, alone, does not overcome the presumption of competence afforded to defense counsel. *Strickland*, 466 U.S. at 698. Ultimately, we conclude that defense counsel's strategy "was tactically sound and not unreasonable" under the totality of the circumstances. *Stephenson*, 33 M.J. at 82.

We therefore conclude that "[a]ppellant has not overcome the presumption that it was a reasonable strategic decision, under the circumstances of this case and prevailing professional norms . . ." for the defense counsel to employ a defense approach that argued some of the activity was consensual, but denied that the actual charged activity occurred. *Mazza*, 67 M.J. at 475. "Because Appellant has not satisfied the first *Strickland* prong, we need not address the second prong" of prejudice. *Id*. at 476.

**CONCLUSION**

On consideration of the entire record, the assigned error, and the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we find appellant's arguments to be without merit. We hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge KERN and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court