# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32745**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jacob A. OLLISON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 March 2024

———————————

*Military Judge*: Thomas A. Smith.

*Sentence*: Sentence adjudged 25 October 2022 by SpCM convened at Altus Air Force Base, Oklahoma. Sentence entered by military judge on 30 November 2022: Bad-conduct discharge, confinement for 1 month, and reduction to E-1.

*For Appellant*: Major David L. Bosner, USAF; Major Alexandra K. Fleszar, USAF; Major Frederick J. Johnson, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire; Abigail E. Thomas, Legal Extern.[1]

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge GRUEN joined.

———————————

[1] Ms. Thomas was supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEARLEY, Judge:

A special court-martial composed of a military judge alone found Appellant guilty, consistent with his pleas, of one specification of larceny of military property in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for one month, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence and denied Appellant's request to defer the reduction in grade until the entry of judgment.

Appellant raises two issues on appeal, which we have reworded here: (1) whether Appellant's sentence is inappropriately severe; and (2) whether Appellant received effective assistance of counsel.[3] Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND[4]

In October 2020, Appellant was transferred from Malmstrom Air Force Base (AFB), Montana, to Altus AFB, Oklahoma. Appellant's unit at Altus AFB possessed an all-terrain vehicle (ATV) which was broken and required repair. Appellant had a background in vehicle repairs and believed he could repair this ATV. He sought permission from the unit's supply technician to take the vehicle to his personal residence for repairs, but his request was denied. Subsequently on 17 March 2022, Appellant obtained a trailer from the outdoor recreation center on Altus AFB to haul a generator and 4 x 4 wood planks to his off-base house. Appellant also loaded the ATV onto this trailer and drove it to his house, which was on farm property. Appellant told the military judge his intention was to repair and return the ATV to his unit. He estimated that the repairs would take approximately two weeks. Appellant acknowledged that he knew the ATV was military property and believed it would eventually be

———————————————

[2] Unless otherwise noted, all references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed).

[3] Appellant personally raised the ineffective assistance of counsel issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] The following background is drawn primarily from Appellant's sworn statements in his plea inquiry with the military judge and his unsworn statement, supplemented by other information in the record. There was no plea agreement or stipulation of fact.

repaired and used by his squadron. Appellant estimated the vehicle was worth $2,500.00. Appellant stated he ordered $150.00 worth of parts to repair the ATV. Appellant told the military judge that after spending that money and partially fixing the ATV, he thought of "all the ways [he] could use it, being as [he] live[d] out in the country and on a farm and the many uses that an ATV could provide to [him] out there." Appellant then removed the decals and the registration plate that read "US Air Force" from the ATV. Appellant stated he formed the intent to permanently deprive the squadron of the use and benefit of the ATV around the same time that he removed the decals and the license plate.

On 14 April 2022, the squadron supply technician sent an email out to the squadron asking the sections to let him know if they had the missing ATV. Appellant told the military judge he did not come forward at that time because he was nervous, and the additional part needed to repair the vehicle was still on backorder. The next day, Appellant called the supply technician and told him the ATV was at his house. That same morning, security forces investigators showed up at Appellant's house. Appellant was not home, but they found the ATV on Appellant's property and returned it to the base.

## II. DISCUSSION

### A. Sentence Appropriateness

Appellant argues that his sentence, specifically the bad-conduct discharge, is inappropriately severe. Appellant claims his intent to deprive the Government of the ATV "lasted for a single night" and as such, the charged larceny was an offense that was not of a particularly serious nature. Appellant also claims that he "served in an exemplary fashion before encountering a series of personal and professional difficulties." Appellant asks that we use our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to modify his sentence. We are not persuaded that Appellant's sentence is inappropriately severe and find no relief is warranted.

#### 1. Additional Background

During presentencing, Appellant presented an unsworn statement where he shared his background. He told the military judge of his successes early in his Air Force career, to include being promoted early to Senior Airman. He highlighted his move from Malmstrom AFB, where he was doing well, to Altus AFB, where he faced personal and professional challenges. He described his struggles to support his girlfriend through post-partum depression and the loss he felt when he learned his girlfriend's child was not his son. Appellant stated he struggled to fit into his new unit because he had to learn the law enforcement mission of security forces after having previously served at a base with a

nuclear mission. He apologized to his unit, the wing, those in the court proceeding, and his mother.

The Prosecution called three witnesses and admitted several exhibits relating to Appellant's conduct since transferring to Altus AFB. One of the witnesses testified that Appellant had low rehabilitative potential. The exhibits included three letters of counseling, an administrative demotion, and a record of nonjudicial punishment. Appellant's administrative demotion cited driving recklessly and stealing $300.00 from a cash register while he was an employee of a department store.[5]

**2. Law**

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006)) (additional citation omitted). While we have significant "discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency." *Id.* (citations omitted).

According to Rule for Courts-Martial (R.C.M.) 1001(b)(4), trial counsel may "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Under R.C.M. 1001(b)(5), addressing evidence of rehabilitation potential, "the accused's potential to be restored" may also be presented.

**3. Analysis**

We have conducted a thorough review of Appellant's entire court-martial record, including his record of service, and all matters submitted in extenuation and mitigation. Appellant took the vehicle without permission. Twenty-nine days had passed between the day Appellant took the ATV and the day Appellant informed the supply technician that he had the vehicle at his house. During this time, Appellant spent $150.00 in personal funds on the vehicle and removed "US Air Force" property indicators. Appellant told the military judge he formed the intent to keep the vehicle during the last week of March, which is at least two weeks prior to admitting he had the ATV at his house. Any potential consideration for Appellant's claim that he considered keeping the

---

[5] Appellant worked at a department store during off-duty hours.

ATV as his own property only for a short window of time during those 29 days is discounted by several steps Appellant took indicating intent to permanently deprive the Government of the ATV. Considering this particular Appellant, the nature and seriousness of the offense, Appellant's record of service, and all other matters contained in the record of trial, we conclude that the sentence, including a bad-conduct discharge, is not inappropriately severe.

Understanding we have a statutory responsibility pursuant to Article § 66(d), UCMJ, to affirm only so much of the sentence as is correct and should be approved, we conclude the sentence is not inappropriately severe and we affirm the sentence as adjudged.

## B. Ineffective Assistance of Counsel

On appeal, Appellant asserts that he was denied effective assistance of counsel under the Sixth Amendment[6] due to alleged deficiencies in the performance of his trial defense counsel. In support of his claim that he did not receive effective assistance of counsel, Appellant provided a motion to attach his sworn declaration with five attached draft character letters, which this court granted. Specifically, Appellant claims that his trial defense counsel failed to present available evidence during the presentencing proceedings, which consisted of the five draft character letters provided to his counsel. Appellant argues that the failure to submit these character letters, which discussed how Appellant often used his skills to help others, prejudiced him because this information would have provided "mitigating context" by corroborating Appellant's assertion that he initially acted with genuine intent to help his unit. Appellant claims he may have received a lower sentence if this evidence had been presented.

On 30 October 2023, we ordered Appellant's trial defense counsel, Major KH and Captain TW, to provide responsive declarations to address Appellant's ineffective assistance of counsel claims. On 8 December 2023, the court attached those declarations to the record of trial. We considered Appellant's declaration and the draft character letters, and both declarations from his trial defense counsel in addressing Appellant's claims. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020).

We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and his trial defense counsel's assertions. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay,* 37 C.M.R. 411, 413 (C.M.A. 1967) (per

---

[6] U.S. CONST. amend. VI.

curiam). We find a hearing unnecessary to resolve Appellant's claims. We find Appellant has not overcome the presumption of competent defense counsel.

### 1. Additional Background

Appellant stated he obtained five draft character letters in preparation for the presentencing phase of his court-martial. These letters described how Appellant helped others and, in some cases, helped others by repairing vehicles. Appellant claims that, despite having these letters, his trial defense counsel did not present them or other evidence at presentencing, except his unsworn statement. Appellant does not recall discussing with his trial defense counsel the decision of whether to present this evidence.

Appellant's trial defense counsel were generally consistent with each other in their declarations, which discussed their beliefs regarding the strategic impact of the character letters. To admit the letters, trial defense counsel would have to move to relax the rules of evidence under R.C.M. 1001(d)(3). If the rules were relaxed, documents and evidence alleging Appellant committed additional misconduct could be admitted. They decided that the character letters were not worth opening the door to documentation of new, and potentially worse, allegations. Furthermore, two of the five letters were from individuals who knew Appellant for a relatively short period of time, and some of the letters contained pieces of information they wanted to guard against during argument.

Trial defense counsel discussed their concerns about the character letters with Appellant during pretrial preparations. However, they printed the letters and had them prepared for sentencing in the event they decided to use them. Trial defense counsel ultimately concluded that the risk of putting in the character letters and potentially opening the door to evidence of new allegations was unnecessarily high given the relative strength of the character letters and the potential for the new allegations being used to turn any of the character letter authors against supporting Appellant. They also felt the Government's sentencing case had been weak, and the case was progressing in their favor. To avoid giving the Government an opportunity to provide a strong rebuttal presentation, they recommended Appellant to move forward with his unsworn statement and not present additional evidence that would require relaxing the rules of evidence for both parties.

Trial defense counsel claimed the decision not to use the character letters was an informed strategic decision discussed by counsel and made in full consultation with Appellant. Trial defense counsel believed at the time that Appellant understood the factors that were discussed and appeared comfortable to proceed with the course of action recommended by his attorneys.

**2. Law**

The Sixth Amendment guarantees all criminal defendants the right to effective assistance of counsel. *United States v. Gilley* 56 M.J. 113, 124 (C.A.A.F. 2001). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In assessing the effectiveness of counsel, we begin with the premise that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *See United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

In assessing claims of ineffective assistance of counsel, we do not look at the success of the trial defense attorney's strategy in obtaining their goal, "but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citations omitted). "[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'" *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (omission in original) (quoting *Strickland*, 466 U.S. at 689). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475 (citations omitted). This includes decisions to forego offering evidence in an attempt to avoid opening the door to more damaging rebuttal evidence. *See Akbar*, 74 M.J. at 388 (citing American Bar Association

Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (ABA Guidelines) 10.11.G, *reprinted in* 31 Hofstra L. Rev. 913, 1056–57 (2003) (noting that "[i]n determining what presentation to make concerning penalty, counsel should consider whether any portion of the defense case will open the door to the prosecution's presentation of otherwise inadmissible aggravating evidence")).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs*, 71 M.J. at 424 (citation omitted). Trial defense counsel's advice to an accused, or counsel's strategic decision that is unreasonable or based on inadequate investigation, can provide the factual foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474–75 (C.A.A.F. 2005). A finding of ineffective assistance of counsel is appropriate in limited circumstances where a purported strategic or deliberate decision is unreasonable or based on inadequate investigation. *See id.* at 474. "While appellant may . . . disagree with the decision in retrospect," such disagreement does not necessarily mean the defense counsel's performance fell "below *Strickland*'s objective standard of reasonableness." *United States v. McConnell*, 55 M.J. 479, 485 (C.A.A.F. 2001). Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

Ineffective assistance at the sentencing phase of a court-martial "may occur if trial defense counsel either 'fails to investigate adequately the possibility of evidence that would be of value to the accused in presenting a case in extenuation and mitigation or, having discovered such evidence, neglects to introduce that evidence before the court-martial.'" *United States v. Scott*, 81 M.J. 79, 84 (C.A.A.F. 2021) (quoting *United States v. Boone*, 49 M.J. 187, 196 (C.A.A.F. 1998)).

### 3. Analysis

Appellant claims that if the trial court had known about Appellant's practice of helping others repair their vehicles, it would have shown that his initial reason for taking the ATV was genuine—a mitigating factor which could have reasonably influenced his sentence and avoided a bad-conduct discharge.

After reviewing the record of trial and declarations from Appellant and both trial defense counsel, we find that Appellant has not demonstrated deficient performance. While character letters may have provided mitigation by explaining Appellant's willingness to fix cars and help others, the Defense reasonably believed this additional evidence could have opened the door to Government's evidence about Appellant's uncharged misconduct which the Government could have used to successfully argue that Appellant lacked potential

for rehabilitation. Furthermore, the military judge already had evidence of Appellant's willingness to help others and fix cars via the Appellant's plea inquiry and unsworn statement, where Appellant discussed his initial motivation to help the unit and his experience in repairing vehicles.

Appellant's trial defense counsel did not fail to investigate evidence of value, nor did they neglect to introduce valuable evidence. Rather, his counsel pursued a trial strategy intended to preserve the defense goal of minimizing the risk of new allegations and preventing the Government from flipping character witnesses against Appellant. The strategic decision not to present the additional evidence was reasonable under the circumstances, and we will not second-guess reasonable strategic decisions. *See Akbar,* 74 M.J. at 388. Therefore, based on the objective reasonableness of the defense team's actions, their tactical decisions did not fall "measurably below" the standards expected of fallible lawyers. *See Gooch*, 69 M.J. at 362; *Dewrell*, 55 M.J. at 133 (citations omitted).

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court