*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
—————————

## UNITED STATES
Appellee

**v.**

## Ryan M. PALIK, Technical Sergeant
United States Air Force, Appellant

**No. 23-0206**
Crim. App. No. 40225

Argued December 6, 2023—Decided March 26, 2024

Military Judge: Colin P. Eichenberger

For Appellant: *Major Matthew Blyth* (argued); *Megan P. Marinos,* Esq.

For Appellee: *Captain Tyler L. Washburn* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel James P. Ferrell*, and *Mary Ellen Payne*, Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge HARDY and Judge JOHNSON joined. Judge SPARKS filed a separate dissenting opinion. Judge MAGGS filed a separate dissenting opinion, in which Judge SPARKS joined.

—————————

Chief Judge OHLSON delivered the opinion of the Court.

This Court again addresses the issue of lost recordings of a Government witness's statement, this time in the context of a claim of ineffective assistance of counsel.

In the present case, Appellant was accused of assaulting his girlfriend, Airman First Class (A1C) S.M., on two separate occasions. The Air Force Office of Special Investigations (OSI) interviewed A1C S.M. on back-to-back days, and it was customary for the agency to video record such interviews. The two trial defense counsel were informed by the Government during pretrial discovery that OSI had lost the videos and that no member of the legal office had reviewed them. Days before the start of trial, the trial defense counsel received OSI case file documentation indicating that the lead OSI investigator for the case was unaware of the time period after which recordings would be erased or overwritten by subsequent recordings, and that the videos of A1C S.M.'s interviews had been deleted from the recording system without having been downloaded.

At trial, the defense cross-examined the lead OSI investigator who conceded that the interview with A1C S.M. had been "recorded" but then "lost." However, the trial defense counsel did not bring a motion under Rule for Courts-Martial (R.C.M.) 914 for production of the recordings after A1C S.M. testified as a Government witness. Appellant was subsequently convicted of offenses solely related to A1C S.M.'s allegations.

We granted review of the following issue:

> The Government lost the only two video-recorded statements from SM, the complaining witness for every convicted offense. Did defense counsel provide ineffective assistance by failing to file an RCM 914 motion after SM's testimony?

*United States v. Palik*, 83 M.J. 452 (C.A.A.F. 2023) (order granting review).

For the reasons set forth below, we hold that the trial defense counsel in this case provided ineffective assistance

when they failed to bring a motion under R.C.M. 914 for production of the recordings of OSI's interviews of A1C S.M. We therefore reverse the decision of the United States Air Force Court of Criminal Appeals (CCA) and set aside the findings and the sentence.

## I. Background

Appellant and A1C S.M. were stationed together at Royal Air Force Base Mildenhall, United Kingdom. They began dating after meeting in the fall of 2019. The relationship was described by Appellant as "very emotional" and full of trust issues because of concerns of infidelity by both parties. The charges involving A1C S.M. arose from two incidents that occurred at Appellant's off-base apartment. The first occurred during July of 2020 when, after returning from a local bar, an argument ensued during which A1C S.M. stated that Appellant choked her. The second incident occurred in August of 2020 when, after a night drinking at the same local bar, Appellant discovered text messages on A1C S.M.'s phone referencing another man. In an ensuing argument, both parties threw each other's phones out the apartment window and A1C S.M. testified that Appellant again choked her.[1]

Shortly after the second incident, A1C S.M. reported to her chain of command that she had been assaulted by Appellant. Later that day, she was interviewed by OSI agents who took pictures of her injuries. OSI conducted a follow-up interview of A1C S.M. the next day. The OSI lead investigator for this case, Special Investigator (SI) H.O., was a new investigator and this was one of her first investigations. Special Agent (SA) R.A. participated in the first interview to train SI H.O. and to take notes of their discussion with A1C S.M.

---

[1] A1C S.M. also testified that at some point during the altercation, she returned to the bedroom to get away from Appellant, but he pried the door open and hit her with the door ten to fifteen times. However, Appellant was acquitted of the charged offense arising from that allegation.

SI H.O. testified at trial that both interviews of A1C S.M. had been recorded but the recordings were subsequently lost. A1C S.M. testified as the next Government witness. After her direct examination, the trial defense counsel did not raise an R.C.M. 914 motion seeking production of the recordings.

SI H.O. was subsequently recalled to testify as a prosecution witness. On cross-examination by trial defense counsel, SI H.O. testified that the recordings of the interviews were "deleted off the system . . . . [for] an unknown reason" before she was able to download them "onto a CD." She also agreed during her testimony that it was a customary practice for OSI to download interviews such as those she conducted with A1C S.M. and then include them in the case file. However, SI H.O. acknowledged that she did not do so in this case. She also acknowledged that she did not discover that the recordings had been deleted until more than two months after the interviews had been conducted.

Contrary to his pleas, a general court-martial consisting of officer members convicted Appellant of two specifications of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2018), and one specification of domestic violence by strangulation on divers occasions in violation of Article 128b, UCMJ, 10 U.S.C. § 928b (2018).[2] The military judge sentenced Appellant to confinement for ten months, reduction to E-1, forfeiture of all pay and allowances, and a bad-conduct discharge. The convening authority took no action on the findings and approved the sentence.

---

[2] One of the convictions for assault consummated by a battery against A1C S.M. was the lesser included offense of domestic violence by strangulation. Appellant was acquitted of two specifications of assault consummated by a battery allegedly committed against A1C S.M.—one arising during each of the July 2020 and August 2020 incidents. He was also acquitted of ten unrelated specifications of assault consummated by a battery allegedly committed against his ex-wife, Staff Sergeant B.K.

On appeal before the United States Air Force Court of Criminal Appeals (CCA), Appellant raised an ineffective assistance of counsel claim against his trial defense counsel because they failed to file an R.C.M. 914 motion for A1C S.M.'s recorded OSI statements. The CCA ordered each of Appellant's trial defense counsel, Major (Maj) A.N., Captain (Capt) O.H., and Capt R.H.,[3] to submit a declaration concerning Appellant's claim that they were ineffective for "fail[ing] to file an R.C.M. 914 motion based on the Government's inability to produce two video-recorded statements of the complaining witness, which were lost by the Government."

The sworn declaration of Maj A.N., the lead trial defense counsel, did not directly mention R.C.M. 914 despite the contents of the CCA's order. Rather, she explained that in July 2021 the defense learned from the Government that the OSI recorded interview of A1C S.M. "was lost and that no member of the legal office had previously reviewed" the recorded interviews. Maj A.N. also stated that days before the start of trial in August 2021, the Government provided OSI "internal data pages" (IDPs) in discovery that included a note created in January 2021, that "[o]n 26 Oct 20, it was discovered the SUBJECT [Appellant], VICTIM [A1C S.M.], and VICTIM [A1C S.M.] follow-up interview recordings were deleted from the Getac system without copying the videos to a disk. SI [H.O.] was unaware of the timeframe OSI requires videos to be copied to a disk."

Maj A.N. then provided the following explanation about the defense's decision-making concerning the lost recordings:

> 6. . . . . Based on experience with OSI, it was my understanding that OSI regulations and standard operating procedures do not require special agents to either audio or video record witness interviews or complaining witness interviews; however, it is

---

[3] Because Capt R.H. did not participate in the trial phase of Appellant's court-martial, his involvement in the case is not relevant to the resolution of the issue.

generally considered a best practice. Furthermore, OSI interviews captured on their recording devices are not indefinitely maintained on the recording device and will be erased after a certain period of time or may be overwritten by subsequent recordings. In this case, the Defense has no knowledge as to whether OSI's recording device was fully functional or definitely captured the two interviews OSI conducted of A1C [S.M.] on 20 August 202[0] and 21 August 202[0]. To the Defense's knowledge, no OSI agent, trial counsel, or member of the legal office has viewed any recording of the two OSI interviews at issue nor have they confirmed their existence at any point.

7. It was the Defense's intent to discredit [SI H.O.] altogether as the lead investigator in this case . . . . Defense counsel questioned [SI H.O.] about the two OSI interviews of A1C [S.M.] as part of the effort to discredit her. In discrediting [SI H.O.] and the investigation, I refer to the videos as lost because I believed it was a fair attack on the investigation generally, but I do not have actual knowledge as to whether they were ever recorded.

8. The Defense considered pursuing the two OSI video recorded interviews further but held concern over the potential for its use by the [G]overnment as prior consistent statements in the event they ever existed and could be produced. Defense counsel recognized the likelihood that A1C [S.M.] would appear distraught, disheveled, or injured in any video recording given her immediate reporting of the assault. I did not continue to pursue the status of the OSI video recorded interviews because I did not want to give trial counsel the ability to use a video recording for prior consistent statements with a potentially sympathetic victim visually depicted in the video. I had concerns that any recorded OSI interview of A1C [S.M.] would be more beneficial to the prosecution than to the defense. It is not unheard of for OSI to later supplement a case file with additional evidence and I was not confident that would not occur in this case because this OSI detachment has previously investigated a separate case in which several discs

of video surveillance not originally associated with its case file were later found on the eve of trial. The Defense's preference was to cross-examine A1C [S.M.] with the version of events she reported to . . . OSI based on their notes, as well as [Appellant]'s version of events, and highlight that OSI did not have the video recordings in an effort to discredit the investigation. The Defense also considered this issue under Rules for Courts-Martial 703(e)(2) and did not further pursue the status of the two OSI video recorded interviews for the same reasons. In light of the recent opinion by the Court of Appeals for the Armed Forces in *United States v. Sigrah* [82 M.J. 463 (C.A.A.F. 2022)], I may have chosen a different approach as to whether the Defense would have continued to pursue the existence or whereabouts of any OSI video recorded interviews of A1C [S.M.].

The sworn declaration of assistant trial defense counsel, Capt O.H., described how she had learned from the Government that the recordings of OSI's interviews with A1C S.M. were "lost," that the Government could not confirm whether the interviews had ever been recorded or were lost after being recorded, and that neither RAF Mildenhall legal office personnel nor the OSI agents involved in the case had ever reviewed a recording of the interviews. Capt O.H. also averred that days before the start of trial, the defense received IDPs created by OSI in discovery that stated in November 2020, SI H.O. informed the Chief of Justice at RAF Mildenhall that both of OSI's interviews of A1C S.M. had been deleted from the OSI software system.

Capt O.H. provided the following explanation concerning how the trial defense counsel adopted the lost recordings into their trial strategy:

> 7. Based on information we had when A1C [S.M.] testified we could not definitively say whether the interviews of A1C [S.M.] had been recorded then lost or never recorded in the first place. I knew from prior experiences with OSI that it was possible the interviews (1) were recorded and not removed from the system, so automatically overwritten after a certain period of time; (2) were

never recorded in the first place due to user error with the software system; (3) were never recorded because an agent did not know that the best practice was normally to record victim interviews; or (4) were never recorded because the recording system malfunctioned. OSI agents have told me before that there is no formal regulation or policy to record victim interviews.

8. Maj [A.N.] conducted the cross[-]examination of A1C [S.M.] . . . . We did not want to delve into the existence or non-existence of the recorded interview anymore [sic] than we already had, because it could've led to more damaging evidence against [Appellant] if the recording existed. We would've needed that information to prevail on a motion under R.C.M. 914. I agreed with her strategy for handling A1C [S.M.'s] testimony. Had *United States v. Sigrah* been decided prior to [Appellant's] trial, I may have viewed the issue under a different lens, but it was not decided until over a year later.

9. I previously dealt with a similar situation in a case the year prior to *United States v. Palik*. In *United States v. Ferrell*, we had the video recording of the interview, but it contained no audio recordings. In that case, the recording software was malfunctioning. Similar to [Appellant's] case, there was an interview that was supposed to be recorded at OSI, there was a pre-OSI interview with a different law enforcement agency, and follow-up interviews that were not recorded. Also similar, no one could definitively say whether the audio ever existed. We raised it as an issue under R.C.M. 703(e)(2), for lost or destroyed evidence, at the motions hearing in the case. The military judge ruled against us for any remedies. *United States v. Ferrell* never progressed to the findings phase of trial, so whether R.C.M. 914 would have been raised or not or whether we would have prevailed if it had is unknown; however, it was not raised as an option when we were strategizing the case. I considered the issue with A1C [S.M.'s] interviews under that experience. Since we could not definitively say the recordings were made in

the first place, my experience indicated we would not prevail under R.C.M. 703(e)(2).

The CCA rejected Appellant's argument, holding no relief was warranted because "Appellant has not overcome the presumption of competence" to show deficient performance by his trial defense counsel.

## II. Standard of Review

Allegations of ineffective assistance of counsel are reviewed de novo. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007).

## III. Applicable Law

### A. Ineffective Assistance of Counsel

An appellant will prevail on an ineffective assistance of counsel claim if he "demonstrate[s] both '(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.'" *United States v. Captain*, 75 M.J. 99, 101 (C.A.A.F. 2016) (quoting *United States v. McIntosh*, 74 M.J. 294, 295 (C.A.A.F. 2015)). "'When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion . . . , an appellant must show that there is a reasonable probability that such a motion would have been meritorious.'" *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)).

This Court applies a three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

Strategic choices made by counsel after a thorough investigation of the law and facts are virtually unchallengeable. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Importantly, however, in *Hinton v. Alabama* the Supreme Court recognized the following: "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." 571 U.S. 263, 274 (2014) (per curiam).

### B. R.C.M. 914

At the time of Appellant's trial, R.C.M. 914 (2019 ed.) provided in pertinent part:[4]

---

[4] In July 2023, the President amended R.C.M. 914 to establish a lost statement exception to the rule's remedy section. The amended rule now provides:

> (e) *Remedy for failure to produce statement.*
>
> . . . .
>
> (2) *Exception.* In the event that the other party cannot comply with this rule because the statement is lost, and can prove, by a preponderance of evidence, that the loss of the witness statement was not attributable to bad faith or gross negligence, the military judge may exercise the sanctions set forth in paragraph (e)(1) of this rule only if—
>
> (A) the statement is of such central importance to an issue that it is essential to a fair trial, and
>
> (B) there is no adequate substitute for the statement.

Exec. Order No. 14,103, Annex 1, § 1(bb), 88 Fed. Reg. 50,535, 50,560-61 (July 28, 2023).

(a) *Motion for production*. After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:

　(1) In the case of a witness called by trial counsel, in the possession of the United States . . . .

. . . .

(e) *Remedy for failure to produce statement*. If the other party elects not to comply with an order to deliver a statement to the moving party, the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice.

The language of R.C.M. 914, "tracks the language of the Jencks Act." *United States v. Muwwakkil*, 74 M.J. 187, 190 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). Specifically, the Jencks Act requires a district court judge, upon motion by the defendant, to order the government to disclose prior "statement[s]" of its witnesses that are "relate[d] to the subject matter" of their testimony after each witness testifies on direct examination. 18 U.S.C. § 3500(b) (2018). Given the similarities in language and purpose between R.C.M. 914 and the Jencks Act, this Court has "conclud[ed] that our Jencks Act case law and that of the Supreme Court informs our analysis of R.C.M. 914 issues." *Muwwakkil*, 74 M.J. at 191.

The Jencks Act jurisprudence of the Supreme Court and this Court recognizes a judicially created "good faith loss doctrine." *Id.* at 193. "This doctrine excuses the Government's failure to produce 'statements' if the loss . . . of evidence was in good faith." *Id.* (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)). However, this Court's predecessor observed that the good faith loss doctrine is "generally limited in its application." *Id.* (internal

11

quotation marks omitted) (quoting *United States v. Jarrie*, 5 M.J. 193, 195 (C.M.A. 1978)).

Two opinions of this Court have applied R.C.M. 914 and are particularly relevant to the resolution of this case: *Muwwakkil*, 74 M.J. 187, and *United States v. Sigrah*, 82 M.J. 463 (C.A.A.F. 2022).

In *Muwwakkil*, in the context of an Article 62, UCMJ, 10 U.S.C. § 862 (2012), appeal, this Court reviewed a military judge's ruling to strike the complaining witness's trial testimony under the Jencks Act and R.C.M. 914 due to the government's failure to produce the recording of the witness's Article 32, UCMJ,[5] testimony. 74 M.J. at 188. The Article 32 testimony had been recorded on two devices, one of which malfunctioned partway through the hearing, but the other recording device functioned properly and recorded the testimony. *Id.* at 189. However, at some point before trial, the witness's testimony was deleted from the functioning device. *Id.* During motions practice, a paralegal in the military justice office conceded that he failed to appropriately "'back up'" the recording, and trial counsel stipulated that she did not provide paralegals in that office with any instruction regarding the handling or preservation of the Article 32 audio in the accused's case. *Id.* The Court held that the military judge did not err in declining to apply the good faith loss doctrine because she had explicitly found that the government had engaged in negligent conduct, and that a finding of negligence may serve as the basis for a military judge to conclude the good faith loss doctrine does not apply in a specific case. *Id.* at 193. The Court then went on to hold that the "plain text of R.C.M. 914 provides two remedies [striking the witnesses testimony or declaring a mistrial] for the Government's failure to deliver a 'statement' without referencing a predicate finding of prejudice to the accused." *Id.* at 194. Therefore, the Court reasoned that a military judge considering an

---

[5] 10 U.S.C. § 832 (2012).

R.C.M. 914 motion in the midst of trial is not required to engage in a prejudice analysis. 74 M.J. at 194 n.4.

In *Sigrah*, a case decided more than a year after Appellant's trial, this Court reviewed a military judge's denial of the appellant's motion to strike the testimony of an alleged victim and two other government witnesses. 82 M.J. at 464-65. Before this Court, the government conceded that the military judge erred in denying the R.C.M. 914 motions and that the government, in its failure to preserve recorded interviews at issue, "showed sufficient culpability to preclude the good faith doctrine." *Id.* at 466 n.2. Thus, the Court's opinion focused on identifying and applying the correct prejudice test on appeal for a preserved nonconstitutional R.C.M. 914 error. *Id.* at 467-68. However, the Court specifically reiterated a point it had made in *Muwwakkil*:

> At the trial level, if the government, as the opposing party, fails to produce a qualifying statement, R.C.M. 914(e) provides the military judge with [only] two remedies for the government's failure to deliver the qualifying statement: (1) "order that the testimony of the witness be disregarded by the trier of fact" or (2) "declare a mistrial if required in the interest of justice."

*Id.* at 467 (citation omitted).

## IV. Discussion

Analytically, we divide this case into two parts: the state of the case at the time of pretrial discovery and the state of the case once A1C S.M. testified at trial. Viewed through this lens, it is clear that trial defense counsel did not provide a reasonable explanation for their failure to raise a motion pursuant to R.C.M. 914 after A1C S.M. testified on direct examination at the court-martial proceedings. *See Gooch*, 69 M.J. at 362.

In the sworn declarations of the two trial defense counsel, they do provide "reasonable explanations" for their actions at the time of pretrial discovery. At the outset of the case, the defense was not sure whether the Government might still be able to recover the recordings, and they did not want to take any steps that would prompt the

Government to redouble its efforts to do so. The defense was understandably concerned that, if found, the Government would be able to introduce the recordings as a prior consistent statement, and the recordings would be damaging to Appellant's case because A1C S.M. would probably appear distraught and injured, making her a particularly sympathetic witness.

But the factual landscape had changed by the time A1C S.M. testified at trial. At that point, it was clear that OSI had indeed lost the recordings. For example, days before the start of trial, defense counsel had received discovery from the Government informing them that the recordings of the interviews of A1C S.M. had been "deleted" from OSI's software system. Further, SI H.O., who testified prior to A1C S.M., confirmed during cross-examination that the interviews of A1C S.M. had been "recorded" but were subsequently "lost." Therefore, at the time of trial it was no longer reasonable for the trial defense counsel to fear that the recordings would somehow surface and be used to Appellant's detriment, regardless of how hard the defense sought to exploit their disappearance. And consistent with this Court's holding in *Muwwakkil*, if the defense had filed a successful R.C.M. 914 motion the military judge would have been required to either strike A1C S.M.'s testimony or declare a mistrial. *See* 74 M.J. at 194. Thus, at the time of trial, there was tremendous upside and virtually no downside for the defense to file that R.C.M. 914 motion.

Despite this reality, the sworn declarations of the trial defense counsel do not provide a reasonable explanation for why they did not file the R.C.M. 914 motion. Tellingly, Maj A.N.'s affidavit does not even directly mention R.C.M. 914 despite the fact that the CCA specifically asked the defense counsel to address that point.

Capt O.H.'s affidavit does mention R.C.M. 914, but it focuses on the defense strategy at trial of attacking the competence of the lead investigator who had failed to retain a copy of the victim's recorded statement. But that explanation seems predicated on a false dichotomy. The defense was not required to choose between undermining the

14

credibility of the government investigation on the one hand and filing an R.C.M. 914 motion on the other. The defense could have—and should have—taken both tacks. Moreover, not only were these two approaches not mutually exclusive, they were not substitutes for one another either. The benefits of successfully pursuing an R.C.M. 914 motion (the military judge striking the victim's testimony or declaring a mistrial) immeasurably outweighed any benefit that could have been gained by only pursuing a strategy of undermining the lead investigator, particularly because the crux of this case was the credibility of the testimony of A1C S.M. and not the competence of the OSI agents.

As outlined below, the trial defense counsels' affidavits and the Government's brief raise a number of points in support of their argument that Appellant's trial defense counsel were not ineffective. However, we conclude that none of these arguments is persuasive.

First, the trial defense counsel seek to explain their inaction by noting that *Sigrah* was not decided until after the instant case went to trial. That is true. However, not only has R.C.M. 914 been in the *Manual for Courts-Martial, United States,* for years, but we also decided *Muwwakkil* in 2015, and that case made it clear just how powerful R.C.M. 914 can be in circumstances very similar to the instant case. 74 M.J. at 194. Moreover, the *Sigrah* case was focused on the correct test for prejudice *at the appellate level* when there was an R.C.M. 914 error at trial, a point that was not relevant to the defense during Appellant's court-martial. *See* 82 M.J. at 467-68. In other words, the plain language of R.C.M. 914 and our holding in *Muwwakkil* were the keys to the appropriate handling of the instant case at trial—not *Sigrah*.

Second, the trial defense counsel seek to explain their inaction by asserting that they were not sure whether the recording had ever existed. That was initially true at the time of pretrial discovery, but by the time of the court-martial that issue had been resolved. In Capt O.H.'s *own* words in her sworn affidavit to the CCA, the IDPs for the investigation stated that "[o]n 26 Oct 20, it was discovered the

15

SUBJECT [Appellant], VICTIM [A1C S.M.], and VICTIM [A1C S.M.] follow-up interview *recordings* were *deleted* from the Getac system without copying the videos to a disk. SI [H.O.] was unaware of the timeframe OSI requires videos to be copied to a disk." (Emphasis added.) (Internal quotation marks omitted.) As can be seen, these investigative notes plainly state that the interviews were recorded, that they were then deleted, and that the reason they were deleted was because SI H.O. did not know of her obligation to preserve them.

Third, the Government's argument that the defense had the burden of convincing the military judge that the recordings once existed and that the defense would not have been able to meet this burden as a predicate for the R.C.M. 914 motion is unavailing. Not only could the defense have cited the IDPs and SI H.O.'s sworn testimony,[6] the defense also could have cited the "presumption of regularity" and noted that it was OSI's practice to record interviews such as the ones conducted with the victim in this case. *See, e.g.*, *United States v. Mark*, 47 M.J. 99, 101 (C.A.A.F. 1997) ("The presumption of regularity entertained in military law is derived from the one in civilian law which attaches to routine administrative acts performed by officials of the Government.").

Fourth, the mere fact that the recordings *no longer* existed provides little support for the Government's supposition that the recordings *never* existed. The record reflects that the OSI's software system overwrites a recording after a certain time frame, and that the lead investigator was not aware of this point and did not try to retrieve the recordings until more than two months had passed since the interviews. Therefore, even if we were to assume that the defense bore the burden of demonstrating that the recordings once existed, they could have met that burden if they had pursued an R.C.M. 914 motion at trial. Moreover, any

---

[6] As necessary, the defense could have further called SI H.O. as a witness on the motion to provide additional corroboration of the relevant contents of the IDPs.

argument that a lack of findings by the military judge makes it difficult to come to a conclusion regarding whether the recordings once existed not only overlooks the ample evidence already contained in the record but also overlooks the important fact that there were no findings here precisely because—in this case where Appellant is alleging *ineffective assistance of counsel*—the trial defense counsel unreasonably *failed* to bring the R.C.M. 914 motion to begin with.

Fifth, any argument that it was reasonable for defense counsel to forego an R.C.M. 914 motion because of the chance that the Government could not only make these deleted recordings reappear but also use them to Appellant's detriment is misguided. If, contrary to the Government's discovery responses and contrary to its own witnesses' testimony, the Government somehow belatedly managed to produce the recordings, the defense would have had a strong argument either to have the military judge bar the Government from using the recordings or to have the military judge declare a mistrial. Under such a scenario, the defense would be able to persuasively argue that they had made the strategic decision to bring the R.C.M. 914 motion and had tailored other aspects of their trial strategy because they were acting in reasonable reliance on the Government's repeated assurances that the videos had been deleted. Trial judges typically take a jaundiced view of such "sandbagging" techniques by the government. Moreover, if the military judge declared a mistrial, during any retrial the defense would remain in the proverbial "driver's seat" because the Government could not unilaterally admit the recordings, and the defense could avoid asking questions of A1C S.M. that might "open the door" for the Government to introduce prior consistent statements drawn from the recordings.

Having determined that the trial defense counsel and the Government have provided no "'reasonable explanation for counsel's actions [or inaction],'" we now address the question of whether defense counsel's level of advocacy fell "'measurably below the performance . . . [ordinarily

expected] of fallible lawyers.'" *Gooch*, 69 M.J. at 362 (alterations in original) (citation omitted). Stated differently, we must determine whether counsel's performance was "deficient" in the context of an ineffective assistance of counsel claim. *Captain*, 75 M.J. at 101 (internal quotation marks omitted) (citation omitted).

At the time of Appellant's court-martial, the law was well settled about what the defense should do in a situation such as this one where a witness testifies, the witness's prior statements were recorded by the Government, and the Government cannot produce that recording because of its own negligence. *See Muwwakkil*, 74 M.J. at 190-94. Namely, the defense should file an R.C.M. 914 motion. Under these circumstances, the trial defense counsel's level of advocacy in this case was indeed deficient because it fell "'measurably below the performance . . . [ordinarily expected] of fallible lawyers.'" *Gooch*, 69 M.J. at 362 (alterations in original) (citation omitted).

The final question relevant to a determination of whether the presumption of competence has been overcome is whether there is "a reasonable probability that, absent the errors," there would have been a different result in the trial proceedings. *Id.* (internal quotation marks omitted) (citation omitted). Stated differently, the question is whether counsel's deficient performance "resulted in prejudice." *Captain*, 75 M.J. at 101 (internal quotation marks omitted) (citation omitted). The answer in this case hinges on the question of whether there is a "reasonable probability that such a motion would have been meritorious." *McConnell*, 55 M.J. at 482 (internal quotation marks omitted) (citation omitted). And the answer to that question is, "Yes."

The instant case is strikingly similar to *Muwwakkil*, where we stated that a finding of negligence on the part of the government may serve as the basis to conclude that the good faith loss doctrine basis does not apply. 74 M.J. at 193. Contrary to the Government's argument that the defense would not have been able to surmount the "good faith loss doctrine," the defense had at its fingertips damning

evidence of negligence on the part of OSI. To begin with, the Government made a choice when it set up a recording system that would delete witness interview recordings after a period of time if the recordings were not copied to a more permanent format. Moreover, OSI assigned SI H.O. as the *lead* agent in this case despite her marked lack of experience as an investigator. She clearly did not understand a fundamental point: when you record a victim's statement, you need to preserve it. And yet, it appears that senior OSI agents failed to adequately supervise SI H.O.'s actions or to inform her of this important point.

As a consequence, there was a reasonable probability that the defense would have prevailed on the merits of an R.C.M. 914 motion. And, as *Muwwakkil*, 74 M.J. at 194, and *Sigrah*, 82 M.J. at 467, make clear, the military judge would have had only two available remedies: strike the victim's testimony or declare a mistrial.[7] Needless to say, there is a "reasonable probability" that the imposition of either of these remedies would have led to a different result in the trial proceedings.

Further, the Government's argument that the defense failure to file an R.C.M. 914 is legally excusable because the defense team performed well overall falls flat. The Supreme Court in *United States v. Cronic*, 466 U.S. 648, 657 n.20 (1984), stated that deficient performance on a single issue may give rise to an ineffective assistance of counsel claim. Therefore, regardless of the overall execution of their responsibilities as defense counsel, the fact remains that their performance was deficient because they failed to identify a meritorious and extraordinarily powerful R.C.M. 914 motion readily available to them. *See id.*

---

[7] Unlike the trial defense counsel in *Gooch* who explained in their affidavits why they believed a mistrial would not have been advantageous to their client, 69 M.J. at 362, 362 n.11, the affidavits of the trial defense counsel in this case are silent on their assessments of whether a mistrial would have held either positive or negative ramifications for Appellant.

In conclusion, we find that on the discrete issue of failing to bring an R.C.M. 914 motion after A1C S.M. testified on direct examination as a Government witness, the trial defense counsel provided ineffective assistance of counsel. Although we feel compelled to reach this conclusion based on the facts and the law, by doing so we do not seek to disparage the defense counsel in this case. The fact that they were successful in getting Appellant acquitted on a number of specifications serves as a testament to their legal skills, and based on the contents of their affidavits to the CCA and on the record before us as a whole, it is apparent to this Court that Maj A.N. and Capt O.H. acted both ethically and diligently on behalf of their client. Moreover, we are acutely mindful of the fact that at the appellate level we have the opportunity to take the time to reflect at length on various aspects of a case and the law—a luxury often not afforded to trial attorneys such as Maj A.N. and Capt O.H. Having said that, however, as we noted earlier, the Supreme Court has held that "an attorney's ignorance of a point of law that is fundamental to the case combined with the failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland.*" *Hinton*, 571 U.S. at 274. Therefore, Appellant's convictions cannot stand. *See id.*

## V. Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and the sentence are set aside. The record shall be returned to the Judge Advocate General of the United States Air Force. A rehearing is authorized.

Judge SPARKS, dissenting.

I agree with Judge Maggs that Appellant's counsel were not deficient. I write separately to address the majority's conclusion that this Court is able to determine whether Appellant was prejudiced by his counsels' shortcomings. To find prejudice, I believe, requires this Court to make factual findings about the existence of the recordings in question and the negligence of the government investigators, determinations beyond the scope of this Court's statutory authority. Because I cannot join the majority's analysis of these issues, I respectfully dissent. Even if I were to conclude that Appellant's counsel were deficient, I would remand this case to the lower court for the factfinding necessary to resolve the issue of whether Appellant was prejudiced.

## I. Standard of Review

This Court reviews de novo allegations of ineffective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). "Ineffective assistance of counsel is a mixed question of law and fact." *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). "Factual findings are reviewed under a clearly-erroneous standard of review, but the ultimate determinations whether counsel were ineffective and whether their errors were prejudicial are reviewed *de novo.*" *Id.* (citing *United States v. Wean*, 45 M.J. 461, 463 (1997)). The service Courts of Criminal Appeals have the specific statutory authority to "determine controverted questions of fact." Article 66(d)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(1) (2018). However, this Court has no such statutory authority. *See* Article 67, UCMJ, 10 U.S.C. § 867.

## II. Background

The United States Air Force Court of Criminal Appeals (AFCCA), described the facts relevant to Appellant's allegation of ineffective assistance of counsel as follows:

> On 20 and 21 August 2020, SM was interviewed by AFOSI agents. Although the agents who conducted the interview believed the interviews were recorded, the video recordings

were ultimately "lost." At trial, Special [Investigator (SI)] HO testified, "[T]hose interviews were deleted off the system. There's an unknown reason. However, they were deleted before we were able to put them on a CD." [SI] HO realized that the recordings were missing on 26 October 2020.

On 19 November 2020, AFOSI notified the base legal office about the missing videos. On 23 July 2021, assistant trial counsel informed Appellant's trial defense counsel that "any [AF]OSI recorded interview of [SM] was lost and that no member of the legal office has previously reviewed any AFOSI recorded interview of [SM]."

After SM testified at Appellant's court-martial on behalf of the Government, trial defense counsel did not make a motion under R.C.M. 914 asking the military judge to order the Government to produce the allegedly video-recorded statements SM made to AFOSI, or request any remedy based on the Government's inability to produce such statements.

*United States v. Palik*, No. ACM 40225, 2023 CCA LEXIS 185, at *15-16, 2023 WL 3151086, at *6 (A.F. Ct. Crim. App. Apr. 28, 2023) (second, fourth, fifth, and sixth alterations in original) (unpublished). The AFCCA ordered affidavits from Appellant's trial defense team explaining their reasons for not filing a Rule for Courts-Martial (R.C.M.) 914 motion.

In analyzing Appellant's claim of ineffective assistance of counsel, the AFCCA concluded that Appellant's trial defense counsel "articulated a reasonable rationale for not [seeking production of the victim's recorded statements]—they could not confirm that the video recordings in question ever existed, and feared they might exist." They further explained that Appellant's counsel made a strategic decision "not to press the Government to either search for the videos or produce the videos because they did not think it would be helpful to Appellant's defense." And finally, the AFCCA determined that "it was reasonable for Appellant's defense counsel to question whether the video recorded interviews existed because the videos had never been viewed by AFOSI agents or any member of the prosecution

team." All of these conclusions by the AFCCA are predicated on its recognition that there was a legitimate question as to whether S.M.'s interviews were ever, in fact, recorded.

### III. Analysis

Because the AFCCA found that Appellant's trial defense counsel were not deficient, it did not reach the question of whether Appellant was prejudiced by his attorneys' failure to file a R.C.M. 914 motion. Such an analysis would require it to examine whether the record supports findings that: (1) the interviews were recorded; (2) the recordings were lost; (3) the loss was the result of the Government's negligence; and (4) the Government's negligence was sufficient to preclude the application of the good faith loss doctrine. Perhaps the AFCCA could make these findings based solely on the record of trial or they may find that a *DuBay* hearing is necessary to further develop the record, but that is not up to this Court to decide. *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967). Nonetheless, the majority has determined that the record is sufficient to answer each of these questions, so I will briefly discuss my concern with that determination.

First, the majority finds that the interviews of S.M. were recorded. I do not dispute that the record supports such a finding, but this is exactly the sort of finding that must be made by a court with factfinding authority. I will also note that there is evidence in the record to dispute such a finding. And indeed, the AFCCA found in this case that "it was reasonable for Appellant's defense counsel to question whether the video recorded interviews existed because the videos had never been viewed by AFOSI agents or any member of the prosecution team." Even if it was unreasonable for Appellant's trial defense counsel not to file the R.C.M. 914 motion based on the record at that point in time, as the majority concludes, that does not mean it was unreasonable for them to question whether the videos ever actually existed. While the majority is quick to conclude that Special Investigator (SI) H.O. negligently failed to download the recordings, they brush off the

possibility that SI H.O. just as easily could have failed to record the interviews in the first place.

Second, it is impossible to conclude that the recordings were lost without concluding that they existed in the first place. This may seem like a trivial concern, but again, it is the exact sort of factual finding that this Court is not authorized to make.

Third, the majority concludes that the loss of the recordings was due to the negligence of the Government. In describing this conclusion, the majority explains:

> [d]ays before the start of trial, the trial defense counsel received OSI case file documentation indicating that the lead OSI investigator for the case was unaware of the time period after which the recordings would be erased or overwritten by subsequent recordings, and that the videos of A1C S.M.'s interviews had been deleted from the recording system without having been downloaded.

*United States v. Palik*, __ M.J. __, __ (2) (C.A.A.F. 2024). They base this conclusion on the fact that prior to trial Appellant's trial defense counsel received investigation notes that stated, "On 26 Oct 20, it was discovered the SUBJECT, VICTIM [S.M.] follow-up interview video recordings were deleted from the Getac system without copying the videos to a disk. SI [H.O.] was unaware of the timeframe OSI requires videos to be copied to a disk." I point out here that this investigative note is just that, a note from the investigator and not an actual record of the recording having been deleted.

The majority incorrectly concludes that the investigation notes and the investigator's testimony at trial that the recordings were "lost," demonstrate that the videos were lost due to the Government's use of a system that automatically deletes recordings after a set amount of time. Contrary to the majority's conclusion, no Government agent testified that this is the way the recording system works. Rather, this conclusion is based on the affidavits of Appellant's trial defense counsel, who claim that based on their own experience dealing with OSI, "interviews captured on their recording devices are not indefinitely

maintained on the recording device and will be erased after a certain period of time or may be overwritten by subsequent recordings." Thus, the majority assumes that the loss of the recording was due to the investigator's failure to download the video before it was automatically erased or overwritten by subsequent recordings. SI H.O., in fact, testified that the videos were deleted from the system for "an unknown reason. However they were deleted before we were able to put them onto a CD."

Simply put, SI H.O.'s testimony does not establish that OSI actually implemented a recording system that automatically deletes recordings. Even if that is the case, the record leaves open the question of whether the recording was deleted automatically because the agent failed to download it quickly enough or due to some other malfunction. Again, this is the sort of controverted question of fact that should be determined by the CCA, rather than this Court.

Fourth, the majority assumes, based on their finding of negligence by the Government, that the good faith loss doctrine would not apply in this case. Even assuming that the recordings did exist, I have already discussed why it is possible to conclude that the loss was not necessarily due to the Government's negligence. Additionally, I must point out that even if the Government's loss of the recordings was due to negligence, that does not necessarily foreclose the application of the good faith loss doctrine. The majority correctly points out that in our previous decision in *United States v. Muwwakkil*, we concluded that the good faith loss doctrine is "generally limited in its application" and the military judge did not abuse her discretion by not applying the doctrine when the government's loss of the recordings in question was due to negligence. 74 M.J. 187, 193 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). However, we have never explicitly ruled that the loss of recordings due to the government's negligence prohibits the application of the good faith loss doctrine. Indeed, in *Muwwakkil*, we cited approvingly *United States v. Marsh*, a case in which our predecessor court concluded that the military judge did not abuse his discretion when he denied a R.C.M. 914 motion despite the

fact that the loss of the recordings in question was due to at least some negligence by the Government, but not gross negligence. 21 M.J. 445, 447, 451-52 (C.M.A. 1986). While I understand the majority's belief that the Government's negligence here should preclude the application of the good faith loss doctrine, our case law simply does not demand that it be so.

## IV. Conclusion

Because I believe that Appellant's counsel were not deficient, I respectfully dissent. As explained above, even if I did agree with the majority that Appellant's counsel were deficient, I believe there are important controverted questions of fact that must be resolved before this Court can determine whether Appellant was prejudiced by that deficiency and I would remand this case to the AFCCA for the determination of whether Appellant was prejudiced by his counsels' deficiencies.

Judge MAGGS, with whom Judge SPARKS joins, dissenting.

The Court concludes that trial defense counsel were deficient when they failed to file an Rule for Courts-Martial (R.C.M.) R.C.M. 914 motion *at trial* for production of recordings that investigators may have made when they interviewed the named victim. The Court reasons that, "it was clear that [the Office of Special Investigations (OSI)] had indeed lost the recordings," and during trial it was therefore "no longer reasonable for the trial defense counsel to fear that the recordings would somehow surface and be used to Appellant's detriment." The Court concludes that under these circumstances, trial defense counsel should have made the R.C.M. 914 motion because if the military judge had ordered the Government to produce recordings, and the Government could not comply with the order, then the military judge would have been required either to strike the named victim's testimony or declare a mistrial. The Court determines that trial defense counsel's failure to file the R.C.M. 914 motion prejudiced Appellant because either of these remedies would have changed the result of the case.

I respectfully disagree with the Court's determination that trial defense counsel were deficient. My disagreement rests on three grounds. First, in my view, trial defense counsel had reasonable grounds, at the time of trial, to believe that filing an R.C.M. 914 motion would have been futile, and "[a]n attorney's decision to forego taking actions that likely would be futile is not deficient." *United States v. Palacios Cueto*, 82 M.J. 323, 329 (C.A.A.F. 2022). If trial defense counsel had filed an R.C.M. 914 motion, they could have reasonably expected the Government to oppose it vigorously on the grounds that Appellant could not prove that the investigators ever created the recordings because no one had ever seen them. Even if trial defense counsel had responded by citing Special Investigator (SI) H.O.'s statement that the recordings were created and then lost, trial defense counsel could have reasonably expected that this statement alone would not stand up to scrutiny. The Government's position likely would have been exactly the same as it is today:

> While SI HO testified that the recordings were
> "deleted," that assertion was an assumption made
> to explain the absence of the recordings. When
> asked how the interviews were deleted off the sys-
> tem, she stated "[t]here's an unknown reason."
> This indicates *OSI was unable to confirm the rea-
> son the recordings did not exist in their system*. SI
> HO testified it was OSI policy to record inter-
> views. When she realized the recordings did not
> exist on the system, she jumped to a conclusion to
> explain their absence.
>
> But as Capt OH acknowledged in her declara-
> tion, other occurrences could have explained the
> absence of the videos on the OSI recording system.
> It was possible that the interviews (1) were never
> recorded in the first place due to user error with
> the software system or (2) were never recorded be-
> cause the recording system malfunctioned.

Brief for Appellee at 13-14, *United States v. Palik,* No. 23-
0206 (C.A.A.F. Oct. 10, 2023) (emphasis added) (citations
omitted). Trial defense counsel could have reasonably be-
lieved that the military judge would have accepted the Gov-
ernment's argument and, therefore, that filing the R.C.M.
914 motion would have been unsuccessful.

Second, I do not agree with the Court's reasoning that
"at the time of trial it was no longer reasonable for the trial
defense counsel to fear that the recordings would somehow
surface and be used to Appellant's detriment." At the time
of trial, no one could explain how or why the recordings—
if they ever existed—were not still on the OSI recording
system. SI H.O. stated that they were missing for "an un-
known reason." I agree with the Government's argument
that, without knowing how the alleged recordings had dis-
appeared, trial defense counsel could harbor reasonable
doubts that the recordings would not be found. Indeed, con-
sistent with this argument, trial defense counsel's affidavit
explains:

> It is not unheard of for OSI to later supplement a
> case file with additional evidence and I was not
> confident that would not occur in this case because
> this OSI detachment has previously investigated
> a separate case in which several discs of video

surveillance not originally associated with its case
file were later found on the eve of trial.

Third, I disagree with a key aspect of the Court's legal reasoning. The Court's theory, at bottom, is that the Sixth Amendment required trial defense counsel to move for an order requiring the Government to produce recordings *that trial defense counsel sincerely hoped that the Government could not produce* based on a further hope that the military judge would penalize the Government for not being able to comply. Does the Constitution truly require trial defense counsel to make such a disingenuous request for production? Even if the Court's statement that "there was tremendous upside and virtually no downside for the defense to file that R.C.M. 914 motion" is true, a simple balancing of possible costs and benefits is not the test for ineffective assistance of counsel under the Sixth Amendment. "In determining whether an attorney's conduct was deficient we do not simply ask whether the attorney did everything possible that posed little or no risk to the client." *Palacios Cueto*, 82 M.J. at 329. Instead, the test is whether "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Scott*, 81 M.J. 79, 84 (C.A.A.F. 2021) (internal quotation marks omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Failing to bring similar motions has been held not to constitute ineffective assistance of counsel.[1]

---

[1] For example, in *Lax v. Duckworth*, defense counsel learned that in its response to a valid discovery request, the government had failed to produce a mug shot of his client that had been used in a photo array. No. 89-1384, 1990 U.S. App. LEXIS 19824, at *2, 1990 WL 174970, at *1 (7th Cir. Nov. 9, 1990) (unpublished order). Defense counsel, however, did not move for a continuance and did not file an additional discovery motion. *Id.* at *4-5, 1990 WL 174970, at *2. The United States Court of Appeals for the Seventh Circuit rejected the defendant's subsequent claim of ineffective assistance of counsel. *Id.* at *4-5, 1990 WL 174970, at *2. It held that "[b]ecause the . . . mug-shot would have made no difference in the case, [defense] counsel did not err in failing to request a continuance" and that defense "[c]ounsel was not ineffective for failing to file repetitive discovery motions in the hopes of turning up the . . . mug-shot." *Id.* at *5-6, 1990 WL 174970, at *2.

For these reasons, I conclude that trial defense counsel were not deficient in their performance. Their representation, instead, fell within the wide range of reasonable professional assistance. Seeing no deficiency, I would not reach the issue of prejudice. I therefore respectfully dissent and would affirm the decision of the United States Air Force Court of Criminal Appeals.